## Louisville & Nashville Railroad Company v. City of Shelbyville.

(Decided February 5, 1918.)

### Appeal from Shelby Circuit Court.

1. Contracts—Railroads—Grant of Right of Way—Obligations to Maintain Street—Construction of Contract—Specific Performance. —Previous to July 27th, 1871, Eleventh street in the city of Shelbyville extended from Equity street to Clay street. On that day the city purchased a tract of land for an extension of Eleventh street. In the years 1873 and 1875, a railroad company purchased two additional tracts which formed a natural extension of Eleventh street. In the year 1880, there was an open way over the land thus purchased to the city limits, though Eleventh street had only been dedicated to Clay street. During that year the city granted to the railroad company a right of way, "in and along Eleventh street and through the town limits," on condition that the railroad company should "ballast its road along Eleventh street and keep said street in condition for the passage of wheeled vehicles throughout the town limits so far as said street is occupied or used for the operation of its road." Held, in view of the situation of the parties, the objects to be accomplished and their subsequent conduct, it was contemplated by the contract that the railroad company should ballast Eleventh street not only as it then existed, but as it should thereafter be extended throughout the town limits over the land purchased by the city and by the railroad company for that purpose.

2. Contracts—Right of Way—Contract to Maintain Street—Construction.—The above contract construed and the obligation of the railroad company to keep the street in condition for the passage of wheeled vehicles held to apply to the length of the street throughout the town limits and not to the width of that portion covered by the railroad company's track.

3. Contracts—Contract to Maintain Street—Action by City—Damages.—A city is not entitled to recover damages for a breach of a contract by a railroad company to keep a street in repair where

It has not incurred any expense for that purpose, or paid damages for injuries to persons or property growing out of its defective condition; the mere inconvenience or discomfort of the public not being sufficient to give it a right of action on its own behalf.

BENJAMIN D. WARFIELD and WILLIS, TODD & BOND for appellant.

C. G. BARRICKMAN for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

The city of Shelbyville brought this suit against the Louisville & Nashville Railroad Company, to compel the company to comply with its contract to keep Eleventh Street in condition for the passage of wheeled vehicles, and to recover damages for its failure to comply with the contract for several previous years. Judgment was entered requiring the company to make and keep Eleventh Street for the full width thereof, in condition for the passage of wheeled vehicles between Main Street and Equity Street within said city, but the city's claim for damages was disallowed. The railroad company appeals and the city prosecutes a cross-appeal.

In the month of August, 1880, the city of Shelbyville, by deed duly recorded, granted to the northern division of the Cumberland and Ohio Railroad Company, "the right of way to construct and operate a single track railway across Main Street at its intersection with Eleventh Street and in and along Eleventh Street and through the town limits." Besides other conditions not material to this controversy, the deed provided that "said second party shall make and keep in repair all necessary crossings on all the streets by its road, and erect and keep suitable signboards at its crossings and shall ballast its road along Eleventh Street and keep said street in condition for the passage of wheeled vehicles throughout the town limits so far as said street is occupied or used for the operation of its road."

The Louisville & Nashville Railroad Company is the successor in title to the northern division of the Cumberland & Ohio Railroad Company and now operates its Bloomfield branch along Eleventh Street and throughout the town limits.

It appears that previous to July 27, 1871, Eleventh Street extended from Main Street to Clay Street. On

the above date the city acquired from Margaret A. Money, a strip of land extending south of Clay Street for a distance of about 224 feet, the deed reciting that the tract conveyed "is to form an extension of Eleventh Street in said town." On March 22nd, 1875, the northern division of the Cumberland & Ohio Railway Company, purchased from Mary Anne Deiss and her husband, the right of way over a strip of land thirty feet wide and extending for a distance of 301 feet beyond and south of the tract purchased by the city from Margaret A. Money. Just beyond and south of the above mentioned tract, is a small tract of land purchased by the railroad company in the year 1873 from Bates and wife for right of way purposes. These several tracts form an extension of Eleventh Street from Clay Street to Equity Street, the town limits.

It is the contention of the railroad company that the city did not intend to convey a right of way over private property which it did not own and over which it had no control, and that the obligation imposed by the deed upon the railroad company to keep Eleventh Street in condition for the passage of wheeled vehicles, applied only to Eleventh Street as it then existed, and that the chancellor erred in requiring the railroad company to maintain said street over its own private property. For the purpose of construing the deed, we may place ourselves in the situation of the parties and consider the objects in view. The railroad was seeking the privilege of constructing and operating a single track railway, "in and along Eleventh Street and through the town limits." In order to reach the town limits, it was necessary for the railroad to pass over Eleventh Street, not only as it then existed, but as it should thereafter be extended. To accomplish this purpose, the town furnished a portion of the extended way and the railroad company furnished the balance. When, therefore, the right of way was granted in the year 1880, there was an open way which was traveled by the public from Clay Street to Equity Street, although that way had not been formally dedicated as a street. Under these conditions the railroad company obligated itself to "keep said street, (Eleventh Street) in condition for the passage of wheeled vehicles *throughout the town limits so far as said street is occupied or used for the operation of its road.*" If the parties had intended to confine the railroad com-

pany's obligation to Eleventh Street as it then existed, there would have been no necessity whatever for using the words, "throughout the town limits so far as said street is occupied or used for the operation of its road." Clearly some effect must be given to these words, and their only possible and natural meaning is that, as the right of way was granted throughout the town limits and over an open way which was the natural extension of Eleventh Street, the railroad company obligated itself not only to maintain Eleventh Street as it then existed, but as it should thereafter be extended along the open way theretofore provided by the city and the railroad company for that purpose. Nor is there any merit in the contention that the words, "so far as said street is occupied or used for the operation of its road," conflict with this view. When the deed was made, no portion of the road had been constructed and if the railroad's obligation had been intended to be confined to that portion of Eleventh Street then occupied or used for the operation of its road, the language employed would have been meaningless. Therefore to give the language any effect it must be held to apply to the future and to create an obligation to maintain the street so far as said street shall be occupied or used for the operation of its road. Not only is this view of the contract sustained by the natural meaning of the language employed when construed in the light of the situation of the parties and the objects to be accomplished, but the subsequent conduct of the parties is strongly persuasive of its correctness. At no time since the construction of the railroad has the right of the public to use and travel over the extended highway been interfered with by either the railroad company or the city. On the contrary, residences have been built, not only along that portion of the highway furnished by the city, but that portion furnished by the railroad itself. Not only so but these property owners have constructed sidewalks pursuant to the demands of the city. The city has policed that portion of the town and has caused electric lights to be placed at the intersection of Eleventh Street, as extended, with other streets. In addition to this, the railroad company through its officials, actually improved the highway along that portion lying on its own right of way. Under these circumstances, we conclude that the chancellor did not err in ordering the railroad com-

pany to keep and maintain Eleventh Street in condition for the passage of wheeled vehicles throughout the town limits.

But it is insisted that the judgment is erroneous in requiring the railroad company to keep the street in repair for a width of thirty feet. In this connection it is argued that the company only obligated itself to construct and maintain the street, "so far as the street is occupied and used for the operation of its road," and as only a width of 10 or 11 feet is actually occupied by its track, the company should have been required to keep only that portion in repair. By the contract in question, the company was required not only to ballast its road along said street, but to keep said street in condition for the passage of wheeled vehicles throughout the town limits so far as said street is occupied or used for the operation of its road. In view of the two separate and distinct obligations, viz.: (1) To ballast its road; and, (2) keep said street in condition for the passage of wheeled vehicles, it can not be said that a compliance with one is a compliance with the other, for it was never intended that vehicles should use only the railroad track. Clearly, therefore, the words, "so far as said street is occupied or used for the operation of its road," when considered in connection with the words, "throughout the town limits," apply to the length of the street and not to the width of that portion occupied by the company's track.

On the cross-appeal by the city, it is insisted that the chancellor erred in not allowing damages for the years during which the railroad company failed to comply with its contract. It does not appear that the city has ever incurred any expense in repairing any portion of the highway which the railroad company was under the duty to maintain, or that it has ever had to pay any damages for injuries to persons or property growing out of its defective condition. In the absence of such a showing, it is manifest that the city itself suffered no damage. The most that can be said is, that the public have suffered some inconvenience or discomfort, and neither of these elements is sufficient to give the city a right of action on its own behalf.

Judgment affirmed on both the original and cross appeals.